TAR RIVER CABLE TV, INC. v. STANDARD THEATRE SUPPLY COMPANY

No. 827SC334

(Filed 3 May 1983)

**Evidence § 32— agreement to purchase equipment—parol evidence improper**
> Where plaintiff entered into an agreement to purchase certain items of equipment from defendant and where the contract contained a sentence stating: "This instrument constitutes the entire agreement between the parties for the sale of the goods, and no oral agreements or representations of any kind or nature shall be binding," parol testimony was properly excluded by the trial court and summary judgment was properly entered for defendant.

APPEAL by plaintiff from *Brown, Judge.* Judgment entered 23 November 1981 in Superior Court, EDGECOMBE County. Heard in the Court of Appeals 14 February 1983.

This action arises out of an agreement entered into between Tar River Cable TV (Tar River) and Standard Theatre Supply Company (Standard). Tar River filed this action to recover $81,075.00 in damages due to Standard's alleged breach of their agreement. Standard counterclaimed for $19,845.29 due on the contract, and moved for summary judgment.

Tar River presented the following evidence at the summary judgment hearing through its verified complaint, affidavits, and depositions. Tar River sells cable TV packages to consumers. In August 1979, E. B. Chester, then President of Tar River, and David Smith, then Vice President of Tar River, met with Dave DeHart, Sales Representative of Standard, to discuss the installation of a studio. DeHart told Chester that they had extensive experience in the field of audio/video studio systems, and possessed the skill, expertise, and ability to design and install audio/video systems. Chester and Smith knew little about audio/video systems. They drew a diagram and explained to DeHart the requirements of the system they desired. According to Chester,

DeHart reviewed the diagram, listened to Chester and Smith, told them that he fully understood Tar River's system requirements, and that Standard could design and install the system. Chester told DeHart that he wanted an "engineering drawing" of the system prior to any ordering or installing. DeHart agreed to furnish such a drawing. In September DeHart showed Chester and Smith a purchase order which contained the following items:

| | | |
|---|---|---|
| 1 | Special Panel — SPECIAL AUDIO/VIDEO PANEL — (17) Seventeen outputs audio and video, 11 in-puts from receivers audio and video, (6) six inputs from studio console audio and video, (5) five in-puts, automated audio and video, one main audio video from desk top unit. One desk top unit bur [sic] position audio and video switch with one audio video output. Special audio/video panel shall mount in 19″ EIA rack. (17) seventeen video cables with end plugs 24″ long. (17) seventeen audio cables 24″ with connectors on each end. | 2,800.00 |
| 1 | Panasonic WV4600A Special Effects Generator | 2,095.00 |
| 1 | Sony VCR V02610 | 2,150.00 |
| 1 | Panasonic portable NV9400 recorder | 3,200.00 |
| 1 | Panasonic WV3800 color camera | 4,750.00 |
| 5 | Panasonic 9″ monitors Model TR920MA 195.00 | 975.00 |
| 1 | Panasonic VP-4 tripod | 70.00 |
| 1 | Panasonic AC adaptor NVB51 | 135.00 |
| 1 | Shure Mixer Model M-67 rack mount with meter | 276.00 |
| 3 | Lavelier microphones Electro Voice 6493 102.00 | 306.00 |
| 1 | Shure microphone Model 585SB | 122.00 |
| 8 | Colortran fresnel 6″ 213-205 750 watt 85.00 | 680.00 |
| 2 | Colortran scoop #104-232 750 watt 120.00 | 240.00 |
| 2 | Telex Director Headset CS-81 85.00 | 170.00 |
| 2 | Telex Cameraman Headset CS-61 77.00 | 154.00 |
| | TOTAL PRICE DELIVERED AND INSTALLED | 18,123.00 |

The back of the form contained the following terms and conditions:

1. The Company warrants that the goods are as described in this Quotation, but no other express warranty is

made in respect to the goods. If any model or sample was shown the Buyer, such model or sample was used merely to illustrate the general type and quality of goods and not to represent that the goods would necessarily conform to the model or sample. THE COMPANY DOES NOT WARRANT THAT THE GOODS ARE MERCHANTABLE OR THAT THEY CAN BE USED FOR ANY PARTICULAR PURPOSE. The sole remedy for any defect in the goods shall be the remedy available from the manufacturer of the goods under its warranty if any. In any event, the liability of the Company under any warranty or otherwise shall not exceed the Company's cost of the replacement parts, excluding installation and transportation charges. Notice of any failure to comply with specifications or any defect in the goods shall be given to the Company in writing within 90 days after delivery of the goods; and no action shall be brought by the Buyer on any matter arising out of this sale later than one year after delivery of the goods.

. . . .

5. The Buyer shall not assign this agreement or any rights hereunder without the prior written consent of the Company. *This instrument constitutes the entire agreement between the parties for the sale of the goods, and no oral agreements or representations of any nature or kind shall be binding.* Any amendments to this agreement must be in writing and be signed by the parties. (Emphasis added.)

DeHart quoted a price, which included the equipment, system design, and installation, of $18,123.00. According to Chester, none of the parties considered the purchase order to be a final written agreement. The purchase order listed only major items of equipment and did not specify many of the other components or explain the design of the system. According to Chester, he repeatedly questioned DeHart about the problem of synchronizing the various components. DeHart told Chester that he did not need to worry about it and the system Standard was designing would take care of the problem. In his deposition, Chester said he kept asking DeHart about the synchronization problem. He wanted an engineering drawing but never received one. He said he finally got coerced into letting the system be installed, without an engineering drawing, to see if it would work. There was no

discussion with DeHart about a frame synchronizer. A frame synchronizer, according to Chester, is necessary to obtain a satellite receiver signal. Chester said the system would not work after it was installed. Tar River returned Standard's invoice and told them the system did not perform. All they could do was switch between cameras, they could not switch between cable channels. Tar River had to buy a frame synchronizer, which cost $21,000.00. Chester said he did not know why Standard would not have wanted to sell them a frame synchronizer. Chester installed the frame synchronizer and redesigned the studio himself. He said "all the equipment [Standard had installed] was installed and functioning properly as per manufacturer's design. That's a fact. I don't dispute that at all. Unfortunately, it was the wrong equipment to perform the system functions that our diagram indicated we wanted it to perform." All the equipment was necessary, but a frame synchronizer was also needed for the system to work.

Defendant's affidavits tended to show the following. Roger Carter, Vice President of Audio-Video sales for Standard said Standard installed all the equipment listed in the contract with Tar River. Each item of equipment was functioning properly. DeHart said the contract was the entire written agreement between the parties. He said: "Specifically, I neither made nor does the written contract contain any warranty or promise that the studio equipment which we were selling included any equipment which would synchronize it with any satellite or cable sources. That is a transmission matter involving equipment which I did not even market."

Defendant's motion for summary judgment was granted.

*Spruill, Lane, McCotter and Jolly, by William S. Cherry, Jr., and Charles T. Lane, for plaintiff appellant.*

*Stern, Rendleman and Klepfer, by John A. Swem, for defendant appellee.*

VAUGHN, Chief Judge.

The sole issue presented is whether Tar River's evidence, which it contends presents a genuine issue of fact as to the nature of the contract, was admissible or barred by the parol evidence rule. The parol evidence rule excludes prior or contem-

poraneous oral agreements which are inconsistent with a written contract if the written contract contains the complete agreement of the parties. This rule was explained by our Supreme Court as follows:

> A contract not required to be in writing may be partly written and partly oral. However, where the parties have deliberately put their engagements in writing in such terms as import a legal obligation free of uncertainty, it is presumed the writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing. Accordingly, all prior and contemporaneous negotiations in respect to those elements are deemed merged in the written agreement. And the rule is that, in the absence of fraud or mistake or allegation thereof, parol testimony of prior or contemporaneous negotiations or conversations inconsistent with the writing, or which tend to substitute a new and different contract from the one evidenced by the writing, is incompetent.

*Neal v. Marrone*, 239 N.C. 73, 77, 79 S.E. 2d 239, 242 (1953).

In this case, Tar River agreed to purchase certain items of equipment from Standard. By Tar River's own admission, the equipment was delivered, installed, and functioning properly. Subsequently, they realized that the system they purchased was not sophisticated enough to do what they wanted. They purchased a frame synchronizer, for $21,000.00, installed it, redesigned the system, and then brought this action against Standard for $81,075.00 damages, of which $21,000.00 was for the frame synchronizer. Chester admitted, in his deposition, that if Standard had included the frame synchronizer in the contract he would not have entered into the agreement because it would have been too expensive. The parol evidence rule was designed to apply in this sort of situation. The contract contained the following sentence: "This instrument constitutes the entire agreement between the parties for the sale of the goods, and no oral agreements or representations of any nature or kind shall be binding." Both parties agree that Standard fulfilled the written contract. Tar River's problem is simply that they wanted more than they contracted for. We find that the parol testimony was correctly excluded, and as there is no issue of fact, summary judgment was properly entered for Standard.

Affirmed.

Judges WEBB and EAGLES concur.