McCLURE LUMBER COMPANY, a North Carolina Corporation Plaintiff v. HELMSMAN CONSTRUCTION, INC. a North Carolina Corporation, ROBERT F. HELMS, individually and VERNON E. NASH, JR., Defendants

McCLURE LUMBER COMPANY, a North Carolina Corporation Plaintiff v. HELMSMAN CONSTRUCTION, INC. ROBERT F. HELMS and HELMSMAN CONSTRUCTION COMPANY, INC. a/k/a HELMSMAN CONSTRUCTION, INC., Defendants

No. COA02-1078

(Filed 2 September 2003)

**1. Appeal and Error— preservation of issues—failure to present argument**

   Although plaintiff contends the trial court erred by denying plaintiff's motion to enforce the parties' settlement agreement regarding payment for building materials and release of a mechanic's lien based on the fact that it allegedly undermines the

McCLURE LUMBER CO. v. HELMSMAN CONSTR., INC.

[160 N.C. App. 190 (2003)]

purpose of alternative dispute resolution and court-ordered mediated settlement conferences, this assignment of error is dismissed because plaintiff's brief simply states general legal principles but fails to present any argument as to how the trial court's order violates them or otherwise undermines our system of court-ordered mediated settlement conferences.

**2. Arbitration and Mediation— settlement agreement—material breach**

The trial court did not err by concluding that plaintiff's failure to discharge a letter of credit on the pertinent lot materially breached the parties' mediated settlement agreement even though plaintiff contends it was excused from its obligation to release the letter of credit based on the fact that defendants' second and third payments were approximately seventeen days late, because: (1) pursuant to the settlement agreement's terms, defendant's payment of the first $30,000 was a condition precedent, the occurrence of which gave rise to plaintiff's duty to release the letter of credit and discharge the lien for the pertinent lot; and (2) the trial court found that defendant paid plaintiff in accordance with the terms of the mediated settlement agreement, and this finding was supported by a witness's testimony that he timely delivered the three checks on the dates specified in the settlement agreement, as well as by evidence of the cancelled checks.

**3. Appeal and Error— preservation of issues—failure to state specific grounds for motion**

Although plaintiff contends the trial court's order leaves open numerous unresolved issues in an action to enforce provisions of a mediated settlement agreement, the only issue properly before the Court of Appeals is whether the trial court properly denied plaintiff's motion to enforce the settlement agreement based on the record evidence.

Appeal by plaintiff from judgment entered 20 February 2002 by Judge Albert Diaz in Mecklenburg County Superior Court. Heard in the Court of Appeals 20 May 2003.

*Miller & Miller, by J. Jerome Miller, for plaintiff appellant.*

*Johnston, Allison & Hord, P.A., by Greg C. Ahlum and Alicia Almeida Bowers, for defendants appellees.*

ELMORE, Judge.

On or about 26 May 1999, subcontractor McClure Lumber Company ("plaintiff" or "McClure Lumber") entered into four separate construction contracts with a general contractor, defendant Helmsman Construction, Inc. ("Helmsman"), whereby McClure Lumber agreed to provide building materials and services in connection with the construction of four homes on Lots One, Two, Three, and Four in Union County, North Carolina (collectively, the "Projects"). Lots Two and Four were owned by defendant Vernon E. Nash, Jr. ("Nash"), and lots One and Three were owned by defendant Robert F. Helms ("Helms"). The contracts provided that plaintiff would be paid approximately $30,000.00 for the goods and services it provided on each house, for a total amount of $119,769.99 for the four Projects. However, a dispute arose when Helmsman, asserting that plaintiff's work on the Projects was defective and not performed in a workmanlike manner, refused to pay McClure Lumber's invoices. Plaintiff then filed liens on each of the four Projects, and filed four separate lawsuits (00 CVS 5791, 5792, 5794, and 5795, respectively) against Helmsman, Nash, and Helms (collectively, "defendants") to enforce each lien on or about 13 April 2000. Defendants filed motions to dismiss, answers, and counterclaims in each of the four suits. On 6 February 2001, the trial court ordered the four suits consolidated for mediation.

Prior to mediation, individuals contracted to purchase Lot Two from Nash and Lot Three from Helms. However, before it would insure title over plaintiff's liens encumbering each Lot, First American Title Insurance Company required that a $30,000.00 letter of credit be posted for each Lot. Nash posted two letters of credit for $30,000.00 each to the title insurance company, which then insured title of Lots Two and Three over McClure Lumber's liens. Lots Two and Three were subsequently sold.

On 16 March 2001, a mediated settlement conference was held and the parties reached a settlement, which was memorialized in handwritten form and signed by the parties. McClure Lumber's counsel later prepared a more formal typewritten document (the "Settlement Agreement") which was substantively identical to the handwritten version, was also signed by the parties, and provided in pertinent part as follows:

**McCLURE LUMBER CO. v. HELMSMAN CONSTR., INC.**

[160 N.C. App. 190 (2003)]

. . .

1. <u>Payment</u>. Defendants shall pay to Plaintiff the sum of Fifty-Five Thousand and No/100 Dollars ($55,000.00) in full and final settlement of [the four lien enforcement suits], with payments to be made as follows:

    (1) $10,000 due and payable May 22, 2001[1]

    (2) $10,000 due and payable June 16, 2001

    (3) $10,000 due and payable July 16, 2001

    (4) $10,000 due and payable August 16, 2001

    (5) $10,000 due and payable September 16, 2001

    (6) $ 5,000 due and payable October 16, 2001

. . . .

3. <u>Release of Mechanic's Liens</u>. Upon execution of this Settlement Agreement and Mutual Release, by both parties, Plaintiff shall discharge from the public record . . . it's [sic] mechanics lien claims asserted on Lots 1 and 4 in case Nos. 00-CVS-5792 and 00-CVS-5795. Upon execution of this Settlement Agreement, by both parties, Plaintiff shall dismiss with prejudice all claims against Defendants in case Nos. 00-CVS-5792 and 00-CVS-5795.

4. <u>Letters of Credit</u>. The letters of credit posted by Vernon E. Nash, Jr., to insure title over the liens filed by Plaintiff against Lots 2 and 3 shall be used to secure this Settlement Agreement. . . .

    *Upon Defendants['] payment of the first Thirty Thousand Dollars ($30,000.00) to Plaintiff, Plaintiff agrees that the letter of credit pertaining to Lot 2 shall be released and returned and the lien against such lot shall be discharged.* (Emphasis added)

. . . .

6. <u>Dismissal of 00-CVS-5791 and 00-CVS-5794</u>. Upon receipt of the final payment due hereunder, Plaintiff shall file a Dismissal

---

1. The Settlement Agreement originally provided that the first payment was due on 17 May 2001, but the parties, as indicated by a handwritten alteration to the date accompanied by their initials, subsequently agreed to move the initial payment's due date to 22 May 2001.

with Prejudice as to case Nos. 00-CVS-5791 and 00-CVS-5794 [the lien enforcement actions pertaining to Lots 2 and 3] and Defendants shall dismiss their counterclaims with prejudice as to all four (4) cases.

7. Mutual Release. The Mutual Release attached hereto as Exhibit B shall be a complete release as to all claims relating to Lots 1, 2, 3 and 4.

. . .

Pursuant to the Settlement Agreement, defendants made the first settlement payment via hand delivery of a $10,000.00 check to plaintiff's counsel on 22 May 2001. Defendants contend that the second and third payments were also made in accordance with the Settlement Agreement via defendant Nash's hand delivery of $10,000.00 checks to McClure Lumber's office on 15 June 2001 and 16 July 2001. Plaintiff, however, contends on appeal that the first payment was actually due on 1 April 2001, rendering defendants' 22 May 2001 payment untimely. Plaintiff further contends that the second payment was not received until 3 July 2001, and that the third payment was not received until 3 August 2001, rendering them untimely as well.

It is undisputed that upon receipt of the third $10,000.00 payment from defendants, plaintiff refused to authorize release of the letter of credit posted by Nash pertaining to Lot Two, as required by paragraph four of the Settlement Agreement. Plaintiff likewise refused to release its lien filed against Lot Two. Defendants consequently refused to make the three remaining settlement payments, asserting that plaintiff's instructions to First American Title not to release the letter of credit constituted a breach of the Settlement Agreement and released defendants from any obligation to continue making payments. Plaintiff, by contrast, contends that what it characterizes as the untimely nature of defendants' first three payments released plaintiff from any obligation to release the letter of credit on Lot Two, and that defendants' subsequent refusal to make the remaining three payments placed defendants in breach of the Settlement Agreement.

With the parties at this impasse, on 5 December 2001 plaintiff filed a motion seeking to enforce the Settlement Agreement. The trial court heard plaintiff's motion on 25 January 2002, at which time defendant Nash testified that he hand-delivered the first $10,000.00 payment to plaintiff's counsel on 22 May 2001. Nash further testified

that he hand-delivered both the second and third $10,000.00 payments to plaintiff's office on 15 June 2001 and 16 July 2001 respectively, in each instance leaving the checks with Ann Patterson, plaintiff's credit manager. In support of Nash's testimony that defendants' payments were timely, defendants tendered copies of two cancelled checks, made out by Nash to plaintiff for $10,000.00 each and dated 15 June 2001 and 16 July 2001, respectively. Nash also testified that after making the third $10,000.00 payment, he asked plaintiff's credit manager and plaintiff's counsel to have plaintiff authorize release of the letter of credit on Lot Two, and that plaintiff responded by instructing First American Title not to release the letter of credit "due to the continuing default of [defendants]."

By contrast, Robert B. McClure, Jr., plaintiff's chairman, testified at the hearing that although the checks for the second and third $10,000.00 payments were dated 15 June 2001 and 16 July 2001, defendants did not deliver them to plaintiff's credit manager Patterson until 3 July 2001 and 3 August 2001, respectively, rendering these payments untimely. McClure testified that although he did not see or speak to Nash at plaintiff's office on either 3 July 2001 or 3 August 2001, he knew the checks were not delivered until those dates because (1) according to plaintiff's records, the second and third checks from Nash were deposited on those dates, (2) "[w]e deposit on the same day we receive checks unless we have an arrangement to do otherwise," and (3) plaintiff had no such arrangement with defendants. Plaintiff introduced accounting records indicating McClure Lumber deposited a $10,000.00 check from defendants on 3 July 2001, and another on 3 August 2001.

On 20 February 2002, the trial court entered an order denying plaintiff's motion, which stated in pertinent part as follows:

. . . .

3. Defendant, Vernon E. Nash, Jr. paid the first $30,000 to the Plaintiff in accordance with the terms of the Mediated Settlement Agreement;

4. Plaintiff, McClure Lumber Company materially breached the Mediated Settlement Agreement by failing and refusing to release the Irrevocable Letter of Credit [pertaining to Lot Two] posted by Vernon E. Nash, Jr. and drawn off of American Community Bank;

. . . .

**IT IS THEREFORE ORDERED, ADJUDGED AND DE-CREED THAT**

1. As a result of Plaintiff's material breach of the Mediated Settlement Agreement, Plaintiff is not entitled to enforce the Mediated Settlement Agreement and Defendants are excused from any further performance under the Mediated Settlement Agreement including any obligations set forth in the Agreement with respect to the Letters of Credit [pertaining to Lots Two and Three] posted by Vernon E. Nash, Jr.[]

From this order, plaintiff appeals.

**[1]** First, plaintiff contends in its brief that the trial court's denial of plaintiff's motion to enforce the settlement agreement was error because it "undermines the stated purposes of Alternative Dispute Resolution and, specifically, Court Ordered Mediated Settlement Conferences." Plaintiff's brief correctly notes that the purpose of court-ordered mediation is "to make civil litigation more economical, efficient, and satisfactory to litigants and the State," N.C. Gen. Stat. § 7A-38.1(a) (2001), and that mediated settlement as a means to resolve disputes should be encouraged and afforded great deference because settlement of claims is favored under North Carolina law, *Chappell v. Roth*, 353 N.C. 690, 692, 548 S.E.2d 499, 500 (2001). However, because plaintiff's brief simply states these general legal principles but fails to present any argument as to how the trial court's order violates them or otherwise undermines our system of court-ordered mediated settlement conferences, plaintiff has abandoned this assignment of error. *See* N.C.R. App. P. 28(b)(5) ("Assignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned."); *see also State v. Hatcher*, 136 N.C. App. 524, 526-27, 524 S.E.2d 815, 817 (2000) ("Because of defendant's failure to make any supporting argument or citation of authority, this assignment of error is considered abandoned.")

**[2]** Next, plaintiff contends the trial court erred by concluding that plaintiff's failure to discharge the letter of credit on Lot Two breached the Settlement Agreement, despite evidence that defendants' second and third payments were each approximately seventeen days late. Plaintiff argues that defendants were obligated to pay the entire $55,000.00 settlement amount, in timely monthly installments, despite plaintiff's failure to authorize release of the letter of credit. We disagree.

Our Supreme Court has stated that a mediated settlement agreement constitutes a valid contract between the settling parties which is "governed by general principles of contract law." *Chappell*, 353 N.C. at 692, 548 S.E.2d at 500. "If the contract is clearly expressed, it must be enforced as it is written, and the court may not disregard the plainly expressed meaning of its language." *Catawba Athletics v. Newton Car Wash*, 53 N.C. App. 708, 712, 281 S.E.2d 676, 679 (1981). Thus, we conclude that the trial court correctly treated the Settlement Agreement as a binding, bilateral contract, to be interpreted according to general principles of contract law.

It is a well-settled principle of contract law that "[a] condition precedent is an event which must occur before a contractual right arises . . . ." *In re Foreclosure of Goforth Properties, Inc.*, 334 N.C. 369, 375, 432 S.E.2d 855, 859 (1993). Stated another way, "[a] condition precedent is an act or event, other than a lapse of time, which [unless excused] must exist or occur before a duty to perform a promised performance arises." *First Union Nat. Bank v. Naylor*, 102 N.C. App. 719, 723, 404 S.E.2d 161, 163 (1991) (quoting J. Calamari & J. Perillo, The Law of Contracts § 11-5 (3d ed. 1987)). However, for a contract provision to be construed as a condition precedent, the provision must contain language which plainly requires such construction. *Goforth Properties, Inc.* 334 N.C. at 375-76, 432 S.E.2d at 859. Our appellate courts have held that "the use of such words as 'when,' 'after,' 'as soon as,' and the like, gives clear indication that a promise is not to be performed except upon the happening of a stated event." *Jones v. Realty Co.*, 226 N.C. 303, 306, 37 S.E.2d 906, 908 (1946). This Court has stated that "the contractual language '*[u]pon* the said note . . . being paid in full' indicates in plain language a condition precedent." *Naylor*, 102 N.C. App. at 723, 404 S.E.2d at 163 (emphasis added).

In the case *sub judice*, paragraph four of the Settlement Agreement states that "*Upon Defendants['] payment of the first Thirty Thousand Dollars ($30,000.00) to Plaintiff,* Plaintiff agrees that the letter of credit pertaining to Lot 2 shall be released and returned and the lien against such lot shall be discharged" (emphasis added). We conclude that pursuant to the Settlement Agreement's terms, defendants' payment of the first $30,000.00 was a condition precedent, the occurrence of which gave rise to plaintiff's duty to release the letter of credit and discharge the lien pertaining to Lot Two. *Goforth Properties, Inc.*, 334 N.C. at 375, 432 S.E.2d at 859; *Naylor*, 102 N.C. App. at 723, 404 S.E.2d at 163. Thus, we hold that

plaintiff's failure to authorize release of the letter of credit on Lot Two following defendant's third $10,000.00 payment constituted a breach of the Settlement Agreement. *Cargill, Inc. v. Credit Assoc., Inc.*, 26 N.C. App. 720, 722-23, 217 S.E.2d 105, 107 (1975) ("Conditions precedent . . . must exist or occur before there is a right to immediate performance, before there is a breach of contract duty . . . .").

As a general rule, if either party to a bilateral contract commits a material breach of the contract, the non-breaching party is excused from the obligation to perform further. *Lake Mary Ltd. Part. v. Johnston*, 145 N.C. App. 525, 537, 551 S.E.2d 546, 555, *disc. review denied*, 354 N.C. 363, 557 S.E.2d 539 (2001). Whether a breach is material or immaterial is ordinarily a question of fact. *Millis Construction Co. v. Fairfield Sapphire Valley*, 86 N.C. App. 506, 512, 358 S.E.2d 566, 570 (1987). Here, we conclude that the Settlement Agreement's provision requiring plaintiff to release the letter of credit for Lot Two "[u]pon Defendants['] payment of the first Thirty Thousand Dollars ($30,000.00) to Plaintiff" is a material term of the Settlement Agreement. Both Nash and Helms testified that defendants would not have agreed to the settlement if plaintiff had not promised to release the letter of credit on Lot Two after payment of the first $30,000.00. In addition to being found in paragraph four of the formal Settlement Agreement, this provision was inserted in the margin of the handwritten document the parties compiled at the mediated settlement conference to memorialize their agreement, where it was initialed by the parties. We hold that plaintiff's failure to authorize release of the letter of credit on Lot Two following defendants' payment of the first $30,000.00 constituted a material breach of the Settlement Agreement, which excused defendants from their obligation to make any further settlement payments.

Plaintiff's assertion that each of defendant's three settlement payments were untimely and thus excused its obligation to release the letter of credit is without merit. When reviewing a trial court's determination that a party has materially breached a contract, "the appellate courts are bound by the trial judge's findings of fact if there is some evidence to support them, even though the evidence might sustain findings to the contrary." *Williams, Inc. v. Southeastern Regional Mental Health Center*, 89 N.C. App. 549, 550, 366 S.E.2d 516, 517-18 (1988). Here, the trial court found that "Defendant, Vernon E. Nash, Jr. paid the first $30,000.00 to the Plaintiff in accordance with the terms of the Mediated Settlement Agreement." This finding is supported by Nash's testimony that he delivered the first $10,000.00

McCLURE LUMBER CO. v. HELMSMAN CONSTR., INC.

[160 N.C. App. 190 (2003)]

check to plaintiff's counsel, and the second and third checks to plaintiff's office, on the dates specified in the Settlement Agreement, as well as by cancelled checks made out by Nash to plaintiff for $10,000.00 and dated 15 June 2001 and 16 July 2001. We are thus bound by the trial court's finding, and plaintiff's second assignment of error is overruled.

[3] Finally, after a thorough examination of the record, we conclude that plaintiff's assertion in its brief that the trial court's order "leaves open numerous unresolved issues" is without merit. In its Motion to Enforce Provisions of Mediated Settlement Agreement filed 5 December 2001, plaintiff requested only that the trial court "enter an Order compelling Defendants, Vernon E. Nash, Jr., and Robert F. Helms, to perform their obligations as set forth in paragraphs 1, 2, 3, 4, 5 and 6 of the Settlement Agreement." In its order denying plaintiff's motion, the trial court concluded that plaintiff materially breached the Settlement Agreement by failing to release the letter of credit on Lot Two upon defendants' third $10,000.00 payment, and that "Defendants are excused from any further performance under the Mediated Settlement Agreement." Therefore, the only issue properly before this Court is whether the trial court properly denied plaintiff's motion to enforce the Settlement Agreement, based on the record evidence. *See* N.C.R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired . . . if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion."); *see also Buckingham v. Buckingham,* 134 N.C. App. 82, 91, 516 S.E.2d 869, 875-76, *disc. review denied,* 351 N.C. 100, 540 S.E.2d 353 (1999). This assignment of error is overruled.

Affirmed.

Judges WYNN and McCULLOUGH concur.