IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1120

Filed 16 July 2025

Catawba County, No. 21CVS001580-170

YANG REAL ESTATE INVESTMENTS, LLC, Plaintiff,

v.

AFFORDABLE MINI STORAGE OF NEWTON, LLC, Defendant.

Appeal by defendant from order entered 31 July 2023 and advisory order entered 9 July 2024 by Judge William A. Long in Catawba County Superior Court. Heard in the Court of Appeals 21 May 2025.

*Morgan Law, PLLC, by William E. Morgan, for Plaintiff-Appellee.*

*Davis Hartman & Wright, LLP, by R. Daniel Gibson, for Defendant-Appellant.*

COLLINS, Judge.

This appeal arises out of an agreement for the sale of a business and the real property on which it sits. Defendant Affordable Mini Storage of Newton, LLC appeals from the trial court's order indicating it would grant Plaintiff Yang Real Estate Investments, LLC's motion for relief under North Carolina Rule of Civil Procedure 60(b) were an appeal not pending before this Court and the trial court's order granting Plaintiff's motion to enforce the settlement agreement executed between the parties. For the following reasons, we affirm and remand.

## I.    Background

On or about 17 January 2021, Plaintiff and Defendant entered into a purchase agreement, under which Plaintiff would purchase from Defendant the self-storage business and the real property on which the business sits ("Business") located in Newton, North Carolina.  The purchase agreement stated that the closing date was to occur on 1 May 2020, provided that all of the conditions to closing, listed in the purchase agreement, were either satisfied or waived.  Plaintiff did not waive any of the conditions prior to closing.

Closing did not occur on 1 May 2020.  Throughout the next few months, Defendant "made improvements to the physical aspects of the Business and demanded a higher price for the Business."  Then, on 11 December 2020, Defendant informed Plaintiff that it did not "wish to move forward with the sale of the [Business] at this time."

Plaintiff commenced this action on 23 June 2021 by filing a complaint alleging various claims, including breach of contract.  On 20 September 2021, Defendant filed a Motion to Dismiss, Motion to Strike, Answer, and Affirmative Defenses.

On 22 August 2022, the parties conducted a mediated settlement conference, where they "agreed to resolve and settle the disputes between them."  The terms of the settlement agreement, signed by both parties on 22 August 2022, included the following:

> 1. Plaintiff    shall    be    allowed    to    purchase    the

[Business] . . . for the sum of $4.2 million. . . .

2.  Plaintiff shall be on site and inspect the property within ten days of this agreement. . . .

3.  Immediately upon confirmation of this agreement, Defendant shall be entitled to $5,000.00 of the earnest money currently held by escrow agent John Fuller. . . .

4.  Plaintiff shall file a voluntary dismissal with prejudice of the lawsuit by August 26, 2022.

5.  At the conclusion of the inspection described above, Plaintiff shall either

    a.  Sign a new purchase agreement within fourteen days of this agreement to close its purchase of the [Business] for the sum of $4.2 million on or before December 31, 2022. There shall be no extensions absent written agreement signed by all parties. Upon Plaintiff's signing of the new purchase agreement, Defendant shall be entitled to the remaining $20,000.00 earnest money . . . .

    b.  Accept the remaining $20,000.00 in earnest money currently held by escrow agent John Fuller, at which point this matter shall be completed and closed. All parties shall be mutually released for all further obligations.

In accordance with the terms of this settlement agreement, Plaintiff filed a voluntary dismissal with prejudice on 23 August 2022. Plaintiff was on site for an inspection of the Business on 29 August 2022.

On 7 September 2022, sixteen days after the parties agreed to and signed the settlement agreement, Plaintiff signed a new purchase agreement and sent it to Defendant via email. Defendant's counsel responded:

> I have spoken with my client. His position is that your clients had until close of business on Monday, September 5, 2022 (14 days from the date of the August 22, 2022 mediated settlement agreement) to sign a new purchase agreement. We chose to allow one additional day for your clients to sign and return the purchase agreement due to September 5, 2022 being a legal holiday.

Defendant's counsel continued that because Plaintiff had failed to sign a new purchase agreement before 6 September, "the parties must walk away from this dispute as provided in the mediated settlement agreement."

Plaintiff filed a Rule 60(b) motion for relief from the judgement voluntarily dismissing its claim with prejudice and a motion to enforce the settlement agreement—by requiring Defendant to sell the Business to Plaintiff—on 29 June 2023. Defendant filed a response on 20 July 2023, which included counter-motions for summary judgment to enforce the settlement agreement—by requiring Plaintiff to accept the $20,000 in earnest money and to accept that "this litigation is closed and Defendant has been released from any obligation to Plaintiff"—and for attorney's fees.

The trial court, by written order entered 31 July 2023, granted Plaintiff's motion to enforce the settlement agreement and "reserved any ruling as it relates to any motion under Rule 60. . . ." On 30 August 2023, Defendant filed a Rule 60(b) motion for relief from the trial court's 31 July order to enforce the settlement agreement and appealed the order enforcing the settlement agreement to this Court.

On 15 February 2024, this Court directed the trial court "to conduct an

evidentiary hearing, if necessary, on the Rule 60(b) Motions before it and indicate what action it would be inclined to take were an appeal not pending before the Court of Appeals."

An evidentiary hearing was held on 6 March 2024, and on 9 July 2024, the trial court entered a written order indicating that it "would take the following actions were an appeal not pending before the Court of Appeals:"

1. The Defendant's Rule 60(b) Motion is GRANTED;

2. The Plaintiff's Rule 60(b) Motion seeking relief from and striking the Voluntary Dismissal with Prejudice filed by the Plaintiff on August 23, 2022, is GRANTED;

3. The Plaintiff's Motion for Enforcement of Settlement Agreement is GRANTED;

4. The Defendant's Motion for Summary Judgment for Enforcement of Settlement Agreement is DENIED and, to the extent necessary to enforce the terms of the Settlement requiring the Defendant to sell the Business to the Plaintiff, Summary Judgment is GRANTED to the Plaintiff;

5. The Defendant's Motion for Attorney's Fees is DENIED[.]

Defendant timely appealed from this indicative order.

## II.   Discussion

## A. Plaintiff's Rule 60(b) Motion

Defendant first argues that the trial court erred by indicating that it would set aside Plaintiff's voluntary dismissal under Rule 60(b).  We disagree.

The main objective of Rule 60(b) is to "strike a proper balance between the

conflicting principles of finality and relief from unjust judgments." *Carter v. Clowers*, 102 N.C. App. 247, 254 (1991) (citation omitted). Generally, "a motion for relief under Rule 60(b) is addressed to the sound discretion of the trial court and appellate review is limited to determining whether the court abused its discretion." *Sink v. Easter*, 288 N.C. 183, 198 (1975) (citation omitted). Under an abuse of discretion standard, "we review to determine whether a decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Mark Grp. Int'l, Inc. v. Still*, 151 N.C. App. 565, 566 (2002) (citation omitted).

Rule 60(b)(1) authorizes the trial court to relieve a party from a final judgment or order due to "[m]istake, inadvertence, surprise, or excusable neglect." N.C. Gen. Stat. § 1A-1, Rule 60(b)(1) (2023). "Although the decision to set aside a judgment under Rule 60(b)(1) is a matter within the trial court's discretion, what constitutes 'excusable neglect' is a question of law which is fully reviewable on appeal." *In re Hall*, 89 N.C. App. 685, 687 (1988) (citations omitted).

To grant relief from a final order on the grounds of excusable neglect under Rule 60(b)(1), "the moving party must show that the judgment rendered against him was due to his excusable neglect and that he has a meritorious defense." *Monaghan v. Schilling*, 197 N.C. App. 578, 584 (2009) (citation omitted). "While there is no clear dividing line as to what falls within the confines of excusable neglect . . . , what constitutes excusable neglect depends upon what, under all the surrounding circumstances, may be reasonably expected of a party in paying proper attention to

his case." *Croom v. Hedrick*, 188 N.C. App. 262, 267 (2008) (citation omitted).

Relief under Rule 60(b)(1) depends upon "the intention of the party seeking relief." *T.H. v. SHL Health Two, Inc.*, 293 N.C. App. 462, 466 (2024). "The relevant intention, however, is not the intended outcome of an action; the relevant intention is the intended action." *Id.* at 466-67. (emphasis and citation omitted). "Generally, this Court will not find excusable neglect where the party establishes merely that he was ignorant of the judicial process or misunderstood the nature of the action against him, even when the party has little education." *Grier v. Guy*, 224 N.C. App. 256, 259 (2012) (citation omitted). Rather, to get relief under Rule 60(b)(1) for excusable neglect, "the material question is whether Plaintiff deliberately took the action for which Plaintiff requests relief." *T.H.*, 293 N.C. App. at 467 (citation omitted).

Here, the trial court found that the requirement that Plaintiff sign a new purchase agreement within fourteen days was not a material term to the settlement agreement; thus, Defendant's "refusal to sign the new purchase agreement after receiving the signed purchase agreement from [] Plaintiff was arbitrary . . . ." The trial court therefore concluded,

> 7. By refusing to execute the purchase agreement and close on the sale of the Business, [] Defendant deprived [] Plaintiff of the benefit of the bargain of the Settlement.
>
> 8. To deprive [] Plaintiff of the benefit of the bargain on the sole basis of Plaintiff's returning the executed purchase agreement one day later than contemplated in the Settlement would be unjust.

We agree with the trial court.

Plaintiff filed for a voluntary dismissal with prejudice pursuant to the terms of the settlement agreement, which had been signed by both parties. In doing so, Plaintiff was acting under the assumption that once it filed for a voluntary dismissal with prejudice and performed the other requirements listed in the settlement agreement, Plaintiff and Defendant would close on the sale of the Business. In filing for a voluntary dismissal, Plaintiff was not "ignorant of the judicial process," and in no way did Plaintiff misunderstand the nature of the action or the consequences that would result. *Grier*, 224 N.C. App. at 259 (citation omitted). Plaintiff's intention was deliberate and obvious; Plaintiff intentionally filed for a voluntary dismissal with prejudice because doing so was an enumerated term of the settlement agreement. This constitutes excusable neglect.

Defendant argues that the voluntary dismissal is not excusable neglect because although Plaintiff intended to dismiss its claims, Plaintiff "simply did not appreciate the consequences of the dismissal." (quoting *T.H.*, 293 N.C. App. at 467 (citation omitted)). This mischaracterizes Plaintiff's action. There is no evidence suggesting Plaintiff did not realize that by dismissing its claim with prejudice, the action would be terminated. To the contrary, Plaintiff accepted this consequence. Plaintiff acted in good faith when it attempted to fulfill its obligations under the settlement agreement; Defendant deprived Plaintiff of the benefit of the bargain by refusing to go through with the sale.

Accordingly, the trial court did not err by indicating that it would grant Plaintiff relief from its voluntary dismissal with prejudice under Rule 60(b)(1). In light of this conclusion, we need not address Defendant's remaining arguments as to why the trial court erred by indicating that it would grant Plaintiff's Rule 60(b) motion under Rules 60(b)(4) and 60(b)(6).

## B. Plaintiff's Motion to Enforce the Settlement Agreement

Defendant next argues that the trial court erred by granting Plaintiff's motion to enforce the settlement agreement and denying Defendant's motion to enforce the settlement agreement. Defendant specifically argues that the plain language of the settlement agreement does support the trial court's conclusion that the fourteen-day deadline for Plaintiff to sign a new purchase agreement is not a material term of the settlement agreement.

"A motion to enforce a settlement agreement is treated as a motion for summary judgment for purposes of appellate review." *Williams v. Habul*, 219 N.C. App. 281, 288 (2012) (quotation marks and citations omitted). Summary judgment shall be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2023). The moving party bears "the burden of demonstrating the lack of any triable issue of fact and entitlement to judgment as a matter of law." *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 695 (2009)

(citation omitted). "On appeal, this Court must review the entire record, viewing the evidence in the light most favorable to the non-moving party." *Williams*, 219 N.C. App. at 289 (citation omitted).

"Questions relating to the construction and effect of a settlement agreement are resolved by employing the same rules that govern the interpretation of contracts generally." *Id.* at 292. (citation omitted). An appellate court is to "interpret a contract according to the intent of the parties to the contract, unless such intent is contrary to law." *Bueltel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 631 (1999) (citation omitted).

"The general rule governing bilateral contracts requires that if either party to the contract commits a material breach of the contract, the other party should be excused from the obligation to perform further." *Coleman v. Shirlen*, 53 N.C. App. 573, 577-78 (1981) (citation omitted). "Whether a breach is material or immaterial is ordinarily a question of fact." *McClure Lumber Co. v. Helmsman Constr., Inc.*, 160 N.C. App. 190, 198 (2003) (citations omitted). "When reviewing a trial court's determination that a party has materially breached a contract, the appellate courts are bound by the trial judge's findings of fact if there is some evidence to support them, even though the evidence might sustain findings to the contrary." *Id.* (quotation marks and citation omitted). A material breach is "one that substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform." *Supplee v. Miller-Motte*

*Bus. Coll., Inc.*, 239 N.C. App. 208, 220 (2015) (citation omitted).

Here, the settlement agreement, on its face, constitutes a complete and enforceable contract for the sale of the Business. Its terms include the identity of the buyer (Yang Real Estate Investments, LLC), the identity of the seller (Affordable Mini Storage of Newton, LLC), the purchase price ($4.2 million), and the identity of the real property to be sold ("the real property and business of the Defendant described in the pleadings"), and also the closing date (on or before 31 December 2022). *See Hurdle v. White*, 34 N.C. App. 644, 648 (1977) (holding that the material terms of an agreement to sell land include the seller, the buyer, the purchase price, and a description of the land that is the subject of the transaction).

The date by which Plaintiff was required to sign the new purchase agreement is not a material term of the settlement agreement. The trial court found that, under the settlement agreement, "Plaintiff and Defendant would enter into a new purchase agreement, drafted by counsel for [] Defendant, to be signed by [] Plaintiff within fourteen (14) days of the date of mediation (which would set that date as September 5, 2022, also the Labor Day Holiday)[.]" Closing on the sale of the Business, however, was to take place "on or before December 31, 2022 (which was 131 days after the mediation)." Defendant unilaterally chose to allow [Plaintiff] one additional day," or until 6 September 2022, to sign and return the new purchase agreement; this action indicates that Defendant did not consider the fourteen-day deadline material. Plaintiff signed the new purchase agreement and sent it to Defendant on 7 September

2022. Although a breach, it does not "substantially defeat[] the purpose of the agreement or go[] to the very heart of the agreement." *Supplee*, 239 N.C. App. at 220 (citation omitted). All essential terms of the parties' contract remained intact, and Plaintiff's intention to fulfill the terms of the settlement agreement and purchase the Business from Defendant remained clear. This is particularly true given the fact that Plaintiff had already voluntarily dismissed its claim with prejudice and traveled to the Business to conduct its inspection.

Defendant argues that Plaintiff presented "no evidence" in support of its motion to enforce the settlement agreement. Plaintiff, however, submitted the settlement agreement, which had been signed by both parties, as evidence to the trial court, and Plaintiff's voluntary dismissal with prejudice was a matter of record on file with the trial court. It is unclear what additional evidence Defendant believes that Plaintiff should have provided. Furthermore, there is no dispute over the facts of this case; rather, the dispositive question is whether Plaintiff's delay in executing the new purchase agreement constitutes a material breach, thus excusing Defendant from its obligations under the contract. As discussed above, we hold that Plaintiff's breach is not material.

Accordingly, the trial court did not err by granting Plaintiff's motion to enforce the settlement agreement.

## III. Conclusion

For the foregoing reasons, we conclude that the trial court did not abuse its

discretion by indicating that it would grant Plaintiff relief from its voluntary dismissal with prejudice under Rule 60(b). The trial court did not err by granting Plaintiff's motion to enforce the settlement agreement and denying Defendant's motion to enforce the settlement agreement. We affirm the trial court's 31 July 2023 order and remand to the trial court to enter a final order consistent with its 9 July 2024 indicative order.

AFFIRMED AND REMANDED.

Judges TYSON and GRIFFIN concur.