Wachovia Ins. Servs., Inc. v. McGuirt, 2007 NCBC 3

| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF MECKLENBURG | 06 CVS 13593 |

WACHOVIA INSURANCE SERVICES,
INC. as survivor corporation of a merger
with CAMERON M. HARRIS & CO.,

                Plaintiff,

    v.

JOHN JACKSON MCGUIRT, JR., and
EDWARDS, CHURCH & MUSE, INC.,

                Defendants.

**ORDER**

*Parker, Poe, Adams & Bernstein, L.L.P. by Deborah L. Edney and William L. Rikard, Jr. for Plaintiff Wachovia Insurance Services, Inc.*

*Rayburn, Cooper & Durham, P.A. by James B. Gatehouse and David S. Melin for Defendant John Jackson McGuirt, Jr.*

Diaz, Judge.

{1}    The Court heard these matters on 21 November 2006 on the Motion of Plaintiff Wachovia Insurance Services, Inc. ("WIS") for Judgment on the Pleadings and to Strike the Tenth Affirmative Defense of Defendant John Jackson McGuirt, Jr. ("McGuirt") and McGuirt's Motion to Disqualify Parker, Poe, Adams & Bernstein, L.L.P. ("Parker Poe") as Counsel for Plaintiff (collectively, "the Motions"). For the reasons set forth below, and after considering the Court file,[1] the pleadings, the Motions, the briefs, and the arguments of counsel, the Court **GRANTS** WIS's Motion for Judgment on the Pleadings and to Strike McGuirt's Tenth

---

[1] The Court considered the Court file, but only as to the Motion to Disqualify.

Affirmative Defense and **DENIES** McGuirt's Motion to Disqualify Parker Poe as Counsel for Plaintiff.

## I.

## PROCEDURAL BACKGROUND

{2}     WIS filed its Complaint in Mecklenburg County Superior Court on 14 July 2006.

{3}     The case was transferred to the North Carolina Business Court and assigned to me as a mandatory complex business case by order of the Chief Justice of the North Carolina Supreme Court dated 9 August 2006.

{4}     On 15 September 2006, McGuirt filed his Answer to WIS's Complaint and a Motion to Disqualify Parker Poe as Counsel for Plaintiff (the "Motion to Disqualify").

{5}     On 5 October 2006, WIS filed a Motion for Judgment on the Pleadings and to Strike McGuirt's Tenth Affirmative Defense (the "Motion for Judgment on the Pleadings and to Strike") and a Memorandum in Opposition to the Motion to Disqualify.

{6}     McGuirt filed a Reply in Support of the Motion to Disqualify on 18 October 2006 and a Response to the Motion for Judgment on the Pleadings and to Strike on 30 October 2006.

{7}     WIS filed a Reply Memorandum in Support of the Motion for Judgment on the Pleadings and to Strike on 9 November 2006.

{8}     On 21 November 2006, the Court heard oral arguments on the Motions.

## II.

## FACTUAL BACKGROUND[2]

---

[2] On a motion for judgment on the pleadings pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure ("Rule 12(c)"), the "trial court may consider only the pleadings and exhibits which are attached and incorporated into the pleadings . . . [n]o evidence is to be heard, and the trial judge is not to consider statements of fact in the briefs of the parties . . . ." *Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 389, 617 S.E.2d 306, 309 (2005), *aff'd*, 360 N.C. 398, 627 S.E.2d 461 (2006) (quoting *Davis v. Durham Mental Health/Dev. Disabilities/Substance*

**A.**

**THE PARTIES**

{9}     WIS is a North Carolina corporation doing business in Mecklenburg County, North Carolina.  (Compl. ¶ 1; Answer Second Defense ¶ 1.)  WIS provides property-casualty insurance brokerage services, risk management consulting, employee benefits and compensation consulting, life insurance, and executive benefits to clients on a nationwide basis.  (Compl. ¶ 4; Answer Second Defense ¶ 4.)

{10}     McGuirt is a former senior vice-president of WIS, (Compl. ¶ 9; Answer Second Defense ¶ 9), and is currently employed by Edwards, Church & Muse, Inc. ("ECM").  (Compl. ¶ 20; Answer Second Defense ¶ 20).

{11}     ECM is a North Carolina corporation with its principal place of business in Mecklenburg County, North Carolina.  (Compl. ¶ 3; Answer Second Defense ¶ 3.)  ECM competes with WIS for customers in the insurance brokerage business.  (Compl. ¶ 3; Answer Second Defense ¶ 3.)

**B.**

**THE FACTS**

{12}     Cameron M. Harris & Company ("CMH") hired McGuirt on 26 March 1990 as a marketing underwriter.  (Compl. ¶ 5; Answer Second Defense ¶ 5.)  He was promoted to producer in June 1992.  (Compl. ¶ 5; Answer Second Defense ¶ 5.)

---

*Abuse Area Auth.*, 165 N.C. App. 100, 104, 598 S.E.2d 237, 240 (2004)) (internal citations and quotations omitted).  Furthermore, when ruling on a motion under Rule 12(c), "[t]he trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party.  All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974).  Consequently, the Court, in ruling on the Motion for Judgment on the Pleadings and to Strike, considered only the pleadings and the documents specifically incorporated into them.  The parties here, however, do not dispute the operative facts with respect to the pending motions but instead disagree over their legal import.

{13}    On 29 October 1991, McGuirt signed an employment agreement with CMH.  (Compl. ¶ 6; Answer Second Defense ¶ 6.)  McGuirt signed an Amended and Restated Employment Agreement ("Amended Employment Agreement") on 1 January 1995.  (Compl. ¶ 7; Answer Second Defense ¶ 7.)

{14}    The Amended Employment Agreement defines McGuirt's "Post-Termination Restriction Period" as "the greater of (x) two (2) years after the termination of [McGuirt's] employment, for any reason . . . or (y) the Bonus/Alternate Bonus payment period as set forth in [McGuirt's] Commercial Lines Vesting Agreement if [McGuirt] shall upon termination of his employment then be entitled to receive any such payments . . . ."  (Compl. Ex. 1 ¶ 6(a).)[3]

{15}    The Amended Employment Agreement provides that, during the "Post-Termination Restriction Period," McGuirt will not:

> Service, place, solicit, divert, take away, or attempt to service, place, solicit, divert, or take away any business, clients, customers or prospects of [CMH], and/or accounts he has been assigned or has developed for the placement of insurance or has in any way serviced at any time during the last two years of his employment with [CMH] . . . .  provided, however, that [McGuirt] shall be allowed to sell, service and place insurance with those clients, customers, prospects, and accounts of [CMH] that were not clients, customers, prospects or accounts produced, assigned to or serviced by [McGuirt] in any way at any time during his last two years of employment with [CMH] and for whom he does not have knowledge of or possess [CMH's] proprietary and confidential information . . . .

(Compl. Ex. 1 ¶ 6(a)(i) (emphasis in original).)

---

[3] The Court may consider the Amended Employment Agreement and its subsequent amendment in ruling on the Motion for Judgment on the Pleadings and to Strike because they are specifically incorporated into McGuirt's Answer.  (*See* Answer Second Defense ¶¶ 7, 12-15, 18, 33, 54, First Affirmative Defense, Sixth Affirmative Defense, Eighth Affirmative Defense, Ninth Affirmative Defense, Tenth Affirmative Defense.)  *See also Praxair, Inc. v. Airgas, Inc.*, 1999 NCBC 5, at ¶ 6 (N.C. Super. May 26, 1999) (considering a document not attached to the pleadings when ruling on Rule 12(b)(6) and Rule 12(c) motions because the document was clearly referenced therein).

4

{16} The Amended Employment Agreement also prohibits McGuirt from soliciting and recruiting employees to leave CMH during the Post-Termination Restriction Period. (Compl. Ex. 1 ¶ 9.)

{17} Finally, the Amended Employment Agreement prevents McGuirt, for a period of two years after the termination of his employment, from pirating or otherwise misappropriating CMH's confidential or proprietary information. (Compl. Ex. 1 ¶ 7.)

{18} On 18 December 1998, McGuirt became a minor CMH shareholder, owning less than 1% of CMH's shares. (Compl. ¶ 9; Answer Second Defense ¶ 8; Link Aff. ¶ 5, Oct. 4, 2006.)

{19} McGuirt, as a minor CMH shareholder, entered into a stock purchase agreement (the "SPA") with CMH, the other CMH shareholders, the Wachovia Corporation, and an acquisition entity, PFAS, Inc. ("PFAS"), on 2 August 2002. (*See* Mem. in Supp. of Mot. for J. on Pleadings and to Strike Ex. 3; Compl. ¶ 1; Answer Second Defense ¶ 1, Tenth Affirmative Defense.)[4]

{20} The SPA contains several restrictive covenants. (*See* Mem. in Supp. of Mot. for J. on Pleadings and to Strike Ex. 3 § 5.15.) These restrictive covenants define the "Restricted Period" as "the period from the Closing Date until 3 years after the Closing Date." (Mem. in Supp. of Mot. for J. on Pleadings and to Strike Ex. 3 § 5.15(A)(2).)

{21} The SPA's restrictive covenants provide that, during the "Restricted Period," no CMH shareholders will:

> directly or indirectly, solicit or induce, or attempt to solicit or induce, any person who is then, or within the previous 180 days has been, an employee of Wachovia . . . to terminate his or her relationship with Wachovia . . . and/or to enter into an employment or agency relationship with any other Person.

(Mem. in Supp. of Mot. for J. on Pleadings and to Strike Ex. 3 § 5.15(B).)

---

[4] The SPA and its subsequent amendment are also specifically incorporated into McGuirt's Answer. (*See* Answer Tenth Affirmative Defense.)

{22} The SPA's restrictive covenants also provide that, during the "Restricted Period," no CMH shareholders will "directly or indirectly, solicit or divert away, or attempt to solicit or divert away, any customer or client of Wachovia . . . for the purpose of selling or providing Competitive Services, provided Wachovia . . . is then still engaged in the sale and provision of such Competitive Services." (Mem. in Supp. of Mot. for J. on Pleadings and to Strike Ex. 3 § 5.15(C).)

{23} Finally, the SPA states that it is "the entire understanding of the parties hereto with reference to the transactions contemplated hereby and supersede[s] any and all other oral or written agreements heretofore made . . . ." (Mem. in Supp. of Mot. for J. on Pleadings and to Strike Ex. 3 § 9.07.)

{24} With regard to the SPA, Parker Poe represented CMH and its shareholders as sellers *vis-à-vis* the Wachovia Corporation as purchaser. (McGuirt Aff. ¶ 3, Sept. 5, 2006; Harris Aff. ¶ 4, Sept. 12, 2006; Link Aff. ¶ 8, Ex. A, Oct. 4, 2006.)

{25} The minor CMH shareholders, like McGuirt, were not involved in negotiating the terms of the SPA, substantive decision making regarding the SPA, or substantive communications with Parker Poe. (Link Aff. ¶¶ 7, 15, Oct. 4, 2006). Further, the minor shareholders did not separately engage Parker Poe to advise or represent them on their individual rights, responsibilities, or benefits under the SPA, and Parker Poe alerted the shareholders of their right to retain separate counsel for the transaction. (Link Aff. ¶ 8, Ex. A, Oct. 4, 2006.)

{26} There is no evidence that Parker Poe has represented McGuirt in any other matter.

{27} On 28 August 2002, McGuirt and WIS executed an Amendment to the Amended Employment Agreement (the "2002 Amendment") wherein the parties agreed to certain modifications of McGuirt's fringe benefits, but otherwise ratified and affirmed the terms of the

6

Amended Employment Agreement. (Mem. in Supp. of Mot. for J. on Pleadings and to Strike Ex. 2; Compl. ¶ 18; Answer Second Defense ¶ 18.)

{28} On 30 August 2002, McGuirt executed an Amendment to the SPA (the "SPA Amendment"). (Mem. in Supp. of Mot. for J. on Pleadings and to Strike Ex. 4.) Exhibit C to the SPA Amendment refers specifically to the 2002 Amendment, stating that "Amendments to existing employment agreements . . . have been entered into with the following individuals . . . McGuirt Jr., John. J." (Mem. in Supp. of Mot. for J. on Pleadings and to Strike Ex. 4.)

{29} That same day, PFAS acquired all of the issued and outstanding shares of CMH's capital stock and caused CMH to merge with it. (Compl. ¶ 1; Answer Second Defense ¶ 1.) CMH survived the merger, and the name of the merged corporation was changed to "Cameron M. Harris & Co." ("Cameron Harris"). (Compl. ¶ 1; Answer Second Defense ¶ 1.)

{30} Following the merger, McGuirt worked as a senior vice-president of WIS. (Compl. ¶ 9; Answer Second Defense ¶ 9.)

{31} On 31 March 2005, Cameron Harris was merged into WIS. (Compl. ¶ 1; Answer Second Defense ¶ 1.)

{32} McGuirt resigned his employment with WIS on 18 April 2006, three and a half years after the execution of the SPA. (Compl. ¶ 19; Answer Second Defense ¶ 19.) McGuirt provided WIS with 90 days' notice of his resignation, consistent with the terms of Amended Employment Agreement. (Compl. ¶ 23; Answer Second Defense ¶ 23.)

{33} Approximately one week after leaving WIS, McGuirt began work at ECM. (Compl. ¶ 20; Answer Second Defense ¶ 20.)

{34}   In its Complaint, WIS alleges, *inter alia*, that McGuirt has breached the Amended Employment Agreement because he is competing with WIS and soliciting WIS employees and customers.  (Compl. ¶¶ 49-55.)

{35}   In his Tenth Affirmative Defense, McGuirt alleges that WIS's claims under the Amended Employment Agreement should be dismissed because the terms of the Amended Employment Agreement were modified by the SPA.  (Answer Tenth Affirmative Defense.)

## III.

## CONCLUSIONS OF LAW

### A.

### MOTION FOR JUDGMENT ON THE PLEADINGS AND TO STRIKE

{36}   The purpose of a motion for judgment on the pleadings pursuant to Rule 12(c) "is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit.  A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain."  *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974).

{37}   A Rule 12(c) motion may be used to dispose of a defense from an answer where the defense is insufficient, as a matter of law, to avoid or defeat the plaintiff's claim.  *See George Shinn Sports, Inc. v. Bahakel Sports, Inc.*, 99 N.C. App. 481, 486, 393 S.E.2d 580, 584-85 (1990).

{38}   "When [the] language of a contract is plain and unambiguous[,] its construction is a matter of law for the court."  *DeTorre v. Shell Oil Co.*, 84 N.C. App. 501, 504, 353 S.E.2d 269, 272 (1987) (citing *Wright v. Auto Sales, Inc.*, 72 N.C. App. 449, 453, 325 S.E.2d 493, 496 (1985)).

{39}    McGuirt and WIS concede that there are no disputed facts as to McGuirt's Tenth Affirmative Defense and that the terms of the relevant contracts are unambiguous.  (*See* Mem. in Supp. of Mot. for J. on Pleadings and to Strike 1; Resp. to Mot. for J. on Pleadings and to Strike 4.)  I agree and therefore conclude that the Court may consider the merits of McGuirt's Tenth Affirmative Defense as a matter of law.

{40}    McGuirt's Tenth Affirmative Defense states, "WIS's claims relating to the [Amended Employment Agreement] must be dismissed because the [Amended Employment Agreement] has been modified by the terms of the [SPA] by which Wachovia Corporation acquired [CMH]." (Answer Tenth Affirmative Defense.)

{41}    In his Response to WIS's Motion for Judgment on the Pleadings and to Strike, McGuirt argues that:  (a) the restrictive covenants in the SPA were substituted for the restrictive covenants in the Amended Employment Agreement; and (b) the SPA's merger clause eliminated McGuirt's obligations under the Amended Employment Agreement.  (Resp. to Mot. for J. on Pleadings and to Strike 3-4, 8; Def. McGuirt's Mot. to Dismiss 14-17, Aug. 8, 2006.)[5]  I address these arguments in turn.

**1.**

**SUBSTITUTION**

{42}    In North Carolina:

> A novation occurs when the parties to a contract substitute a new agreement for the old one.  The intent of the parties governs in determining whether there is a novation.  If the parties do not say whether a new contract is being made, the courts will look to the words of the contracts, and the surrounding circumstances, if the words do not make it clear, to determine whether the second contract supersedes the first.  If the second contract deals with the subject matter of the

---

[5] McGuirt incorporates the arguments in his earlier filed Motion to Dismiss into his Response to Plaintiff's Motion for Judgment on the Pleadings and to Strike.

9

first so comprehensively as to be complete within itself or if the two contracts are so inconsistent that the two cannot stand together a novation occurs.

*Whittaker Gen. Med. Corp. v. Daniel*, 324 N.C. 523, 526, 379 S.E.2d 824, 827 (1989).

{43} Further, "[s]ubstitution of a contract may be effected only by acts or words *wholly inconsistent* with the material terms of the old contract." *Zinn v. Walker*, 87 N.C. App. 325, 335, 361 S.E.2d 314, 320 (1987) (citing 17 C.J.S. *Contracts* § 10 (1963); 17A C.J.S. *Contracts* § 395 (1965)) (emphasis added).

{44} Here, any "inconsistency" between the Amended Employment Agreement and the SPA springs from the fact that the two contracts are distinct agreements that implicate different obligations.

{45} The Amended Employment Agreement is an agreement between McGuirt, as an employee, and WIS, as his employer. (*See* Compl. Ex. 1.) The SPA, on the other hand, is a multi-party agreement between McGuirt, as a seller of CMH stock, and the Wachovia Corporation, as the purchaser of that stock. (*See* Mem. in Supp. of Mot. for J. on Pleadings and to Strike Ex. 3.)

{46} For that reason, the dates triggering the "restricted" periods in each agreement are different; the "Post-Termination Restriction Period" in the Amended Employment Agreement began on the date of McGuirt's termination, (Compl. Ex. 1 ¶ 6(a)), while the "Restricted Period" in the SPA began on the closing of the sale of CMH's stock to the Wachovia Corporation, (Mem. in Supp. of Mot. for J. on Pleadings and to Strike Ex. 3 § 5.15(A)(2)).

{47} Similarly, the Amended Employment Agreement and the SPA contain different customer restrictions; the Amended Employment Agreement restricts McGuirt from soliciting customers that he served during the last two years of his employment, (Compl. Ex. 1 ¶ 6(a)(i)), while the

10

SPA restricts McGuirt from soliciting any Wachovia customer or client, (Mem. in Supp. of Mot. for J. on Pleadings and to Strike Ex. 3 § 5.15(C)).

{48} Although McGuirt asserts that the restrictive covenants may not be enforced consistently on account of these differences, (Def. McGuirt's Mot. to Dismiss 17, Aug. 8, 2006), he offers no support for this position, and I find nothing in either contract that precludes the covenants from co-existing. The differences between the covenants in the Amended Employment Agreement and the SPA do not suggest any intent to substitute the terms of one for the other; rather, the differences simply highlight the distinct obligations imposed on McGuirt as an employee from those imposed on him as a former stockholder. *See generally Davis v. Nat'l Med. Enters., Inc.*, 253 F.3d 1314, 1320 (11th Cir. 2001) (recognizing the distinction between employment agreements and stock purchase agreements based upon the divergent purposes of the agreements and the parties involved in each).

{49} Furthermore, the SPA refers specifically to the continued validity of the Amended Employment Agreement. Exhibit C to the SPA Amendment notes that McGuirt entered into the 2002 Amendment, (Mem. in Supp. of Mot. for J. on Pleadings and to Strike Ex. 4), which, in addition to modifying McGuirt's fringe benefits, expressly ratified and affirmed the terms of the Amended Employment Agreement, (Mem. in Supp. of Mot. for J. on Pleadings and to Strike Ex. 2; Compl. ¶ 18; Answer Second Defense ¶ 18). McGuirt's concession in August 2002 that the SPA did not affect the terms of the Amended Employment Agreement is completely at odds with his attempt today to substitute the SPA's restrictive covenants for those in the Amended Employment Agreement.

{50} Because the terms of the Amended Employment Agreement and the SPA are not wholly inconsistent and, even taken in the light most favorable to McGuirt, show no intent by either

11

party to substitute the terms of one contract for the other, I conclude that the restrictive covenants in the SPA were not substituted for those in the Amended Employment Agreement.

## 2.

## MERGER CLAUSE

{51} McGuirt next argues that the merger clause contained in the SPA eliminated the post-employment restrictions contained in the Amended Employment Agreement. I disagree.

{52} "North Carolina recognizes that merger clauses are valid contractual provisions and the courts consistently uphold their use." *Mech. Sys. & Servs., Inc. v. Carolina Air Solutions, L.L.C.*, 2003 NCBC 9, at ¶ 25 (N.C. Super. Dec. 3, 2003) (citing *Zinn*, 87 N.C. App. at 333, 361 S.E.2d at 318).

{53} However, the primary purpose of a merger clause is "to effectuate the policies of the Parol Evidence Rule; i.e., barring the admission of prior and contemporaneous negotiations on terms inconsistent with the terms of the writing." *Zinn*, 87 N.C. App. at 333, 361 S.E.2d at 318.

{54} Here, the SPA's merger clause is explicitly limited to the transaction at issue in the SPA, that is, the transaction by which Wachovia Corporation acquired CMH. The SPA's merger clause states that it is "the entire understanding of the parties hereto *with reference to the transactions contemplated hereby* and supersede[s] any and all other oral or written agreements heretofore made . . . ." (Mem. in Supp. of Mot. for J. on Pleadings and to Strike Ex. 3 § 9.07. (emphasis added).)

{55} I find no ambiguity here and conclude as a matter of law that the transactions contemplated by the SPA's merger clause are limited expressly to those found in the body of that document. Put another way, the merger clause only works to effectuate the policies of the parol evidence rule with regard to the SPA; it does not vitiate McGuirt's obligations under the

Amended Employment Agreement, a contract referenced in the SPA only to confirm its continued validity. (*See* Mem. in Supp. of Mot. for J. on Pleadings and to Strike Ex. 4.)

{56} In sum, the restrictive covenants in the SPA were not substituted for those in the Amended Employment Agreement, and the SPA's merger clause did not eliminate McGuirt's obligations under the Amended Employment Agreement. Accordingly, McGuirt's Tenth Affirmative Defense fails as a matter of law, and the Court **GRANTS** WIS's Motion for Judgment on the Pleadings and to Strike.

### B.

### MOTION TO DISQUALIFY

{57} McGuirt argues that Parker Poe should be disqualified under North Carolina Revised Rule of Professional Conduct 1.9 ("Rule 1.9") because it formerly represented him with regard to the SPA.

{58} While I disagree with Parker Poe's characterization of McGuirt's Motion to Disqualify as an improper litigation tactic, (*see* Mem. in Opp'n to Def. McGuirt's Mot. to Disqualify 6-9), I conclude that Parker Poe should not be disqualified from representing WIS in this lawsuit.

{59} Under Rule 1.9, a "lawyer who has formerly represented a client in a matter shall not thereafter represent another person *in the same or a substantially related matter* in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." N.C. Rules of Prof'l Conduct R. 1.9 (2006) (emphasis added).

{60} Matters are "substantially related" for the purposes of Rule 1.9 "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that information as would

13

normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." N.C. Rules of Prof'l Conduct R. 1.9 cmt. 3 (2006).

{61} I acknowledge that "in a close case the trial court should not engage in 'hair-splitting' niceties but instead resolve all doubts in favor of disqualification." *Plant Genetic Sys. v. Ciba Seeds*, 933 F. Supp. 514, 517 (M.D.N.C. 1996). However, *Plant Genetic Systems* also states that "[t]he 'substantially related' test requires a 'virtual congruence of issues,' and the relationship between the issues in the prior [representation] must be 'patently clear.'" *Id.* at 518 (quoting *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1148, 1457 (S.D.N.Y. 1985)).

{62} Here, it is undisputed that Parker Poe represented McGuirt in or around August 2002 with regard to the SPA. (Mot. to Disqualify Parker Poe as Counsel for Pl. 1; Mem. in Opp'n to Def. McGuirt's Mot. to Disqualify 3.)

{63} Nevertheless, it is McGuirt's burden to prove that the SPA and the current dispute are substantially related, *see Plant Genetic Sys.*, 933 F. Supp. at 517 ("[T]he moving party has a high standard of proof to meet in order to prove that counsel should be disqualified."), and McGuirt has failed to carry that burden here.

{64} I find that Parker Poe's representation of McGuirt with regard to the SPA is not substantially related to the claims in this lawsuit because: (a) there is no risk that Parker Poe obtained any information during its representation that would materially advance WIS's position in this lawsuit; and (b) the SPA is distinct from the transactions that give rise to WIS's claims.

{65} To begin with, Parker Poe's 2002 representation of McGuirt with regard to the SPA was extremely limited. Parker Poe only represented the CMH shareholders (including McGuirt) as sellers of CMH stock *vis-à-vis* the Wachovia Corporation as purchaser. (Link Aff. ¶ 8, Ex. A, Oct. 4, 2006.) Further, minor CMH shareholders, like McGuirt, were not involved in negotiating

14

the terms of the SPA and did not have substantive communications with Parker Poe. (Link Aff. ¶¶ 7, 15, Oct. 4, 2006). McGuirt also did not separately engage Parker Poe to advise or represent him as to his individual rights, responsibilities, or benefits under the SPA; instead, McGuirt was told that if he had individual questions or concerns, he should retain separate counsel. (Link Aff. ¶ 8, Ex. A, Oct. 4, 2006.) And except for this limited representation almost five years ago, there is no evidence that Parker Poe has ever advised or represented McGuirt in any other matter.

{66} Second, McGuirt makes no claim that Parker Poe has specific information that could be used to his detriment in this lawsuit,[6] and I conclude that there is no such possibility here.

{67} While a "former client is not required to reveal the information learned by the lawyer to establish a substantial risk that the lawyer has information to use in the subsequent matter[,]" a "conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." N.C. Rules of Prof'l Conduct R. 1.9 cmt. 3 (2006).

{68} Given the limited nature of the services Parker Poe provided McGuirt, there is no risk that Parker Poe has confidential information that could be used to McGuirt's detriment in this lawsuit. In that regard, the facts of this case are very different from those relied on by McGuirt in support of his motion to disqualify. In each of those cases, the attorney in question was rightfully disqualified because there was a high risk that the attorney or his firm learned confidential information regarding the matter at the center of the lawsuit during a previous representation.

---

[6] McGuirt states that "Parker Poe likely has knowledge of communications from counsel regarding the impact of the [SPA] on the employment agreements," (Mem. of Law is Supp. of Mot. to Disqualify Parker Poe as Counsel for Pl. 14), but he admits that he "is not aware of any specific confidential information that Parker Poe possesses regarding its prior representation of him." (Reply in Supp. of Mot. to Disqualify Parker Poe as Counsel for Pl. 5).

{69}    For example, in *Superguide Corp. v. DirecTV Enters., Inc.*, 141 F. Supp. 2d 616 (W.D.N.C. 2001), the court disqualified an attorney from representing his client in a patent infringement action against a corporation for which he had acted as lead, national trial counsel in all patent infringement actions it initiated for a period of five years, including an action involving the patent at issue in the pending lawsuit.

{70}    In *Robert Woodhead, Inc. v. Datawatch Corp.*, 934 F. Supp. 181 (E.D.N.C. 1995), the court disqualified Parker Poe from representing its client against one of its client's former employees in a copyright infringement suit because Parker Poe advised the former employee regarding the creation of a software company and, in the process of advising the former employee, learned of the employee's work with the software application at issue in the pending copyright infringement lawsuit.

{71}    Finally, in *Flick Mortgage Investors, Inc. v. The Epiphany Mortgage, Inc.*, 2006 NCBC 3, (N.C. Super. Feb. 1, 2006), this Court disqualified an attorney from representing his client against a client of his former law firm in a matter that was pending at the time of the attorney's departure from the firm because the attorney's former law firm consisted of only three lawyers and the attorney, while at the firm, had unfettered access to all client files.

{72}    Here, all of WIS's claims arise under the Amended Employment Agreement and focus on McGuirt's responsibilities as a former WIS employee.  (*See* Compl. ¶¶ 49-115.)  It is these matters that are at the center of this lawsuit, not the SPA.  Further, given the nature of Parker Poe's limited representation with regard to the SPA—an agreement that I have already concluded as a matter of law does not absolve McGuirt of his obligations under the Amended Employment Agreement—and McGuirt's limited involvement in negotiating the SPA, there is

16

no risk that Parker Poe obtained confidential information from McGuirt that could be used against him in this lawsuit.

{73}    Moreover, that the Court was compelled to decide whether the SPA absolved McGuirt of his obligations under the Amended Employment Agreement does not automatically require Parker Poe's disqualification.  A motion to disqualify under Rule 1.9 does not turn on whether the Court, in the present case, must decide something relating to the previous representation but rather on whether the present case is substantially related to the previous representation.  *See Plant Genetic Sys.*, 933 F. Supp. at 517 ("The movant [on a motion to disqualify] must establish the following: (1) an attorney-client relationship existed with the alleged former client; and (2) *the former representation and the current controversy must be substantially related.*" (emphasis added)).  Were it otherwise, a party could always disqualify opposing counsel simply by asserting a defense relating (however tangentially) to a previous representation of that party by opposing counsel and requiring the court to rule on it.  This would be so regardless of whether the previous representation truly had any substantial relation to the current dispute.

{74}    I determined earlier that the Amended Employment Agreement, which governs McGuirt's obligations as an employee, and the SPA, which governs McGuirt's obligations as a seller of CMH stock, are distinct agreements.  As a result, McGuirt has not met his burden to prove that Parker Poe's current representation is substantially related to its limited representation of McGuirt nearly five years ago.

{75}    McGuirt also argues in passing that questions as to the termination of a "Vesting Agreement" may require disqualification because a Parker Poe attorney may be required to testify on this point.  (Mem. of Law is Supp. of Mot. to Disqualify Parker Poe as Counsel for Pl. 5.)  Based on the record before me, this appears to be unfounded speculation.  First, it is not clear

17

how the "Vesting Agreement" is relevant to any issue before the Court. Second, even if it is somehow relevant, "it does not take an attorney to testify about how and if the Vesting Agreement was terminated." (Mem. in Opp'n to Def. McGuirt's Mot. to Disqualify 5 (quotations omitted).) Indeed, the relevant documents provide the answer. (*See* Mem. in Opp'n to Def. McGuirt's Mot. to Disqualify Ex. B.)[7]

{76}   In sum, while the Motion to Disqualify is far from frivolous, it is neither a "close-case" nor one that requires me to engage in "hair-splitting niceties." I find no basis for disqualifying Parker Poe from representing WIS in this lawsuit, and therefore **DENY** McGuirt's Motion to Disqualify.

## CONCLUSION

{77}   Based on the foregoing, the Court **GRANTS** WIS's Motion for Judgment on the Pleadings and to Strike McGuirt's Tenth Affirmative Defense and **DENIES** McGuirt's Motion to Disqualify Parker Poe as Counsel for the Plaintiff.

This the 13th day of February, 2007.

---

[7] In another case relied on by McGuirt, *The Attic Tent, Inc. v. Copeland*, No. 3:06CV66-W, 2006 U.S. Dist LEXIS 57601 (W.D.N.C. Aug. 14, 2006), the court disqualified an attorney from testifying as an expert for a party attacking a patent because the lawyer had been a "name partner" in the firm that had obtained the patent and testifying as an expert witness gave the appearance that the attorney was changing sides. Here, on the other hand, WIS states, and McGuirt does not deny, that Parker Poe represented CMH and WIS adverse to its employees in relation to the "Vesting Agreement." (Link Aff. ¶¶ 11-14, Oct. 4, 2006.) Consequently, even if a Parker Poe attorney were called to testify about the "Vesting Agreement," it could not be said that the attorney was "changing sides."